IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHRISTIAN CUTLER, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:11-CV-00447 |
| STEPHEN F. AUSTIN STATE UNIVERSITY PRESIDENT BAKER PATTILLO, *et al.*, | § § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Baker Pattillo, Richard Berry, A.C. Himes, and Scott Robinson's ("Defendants") Motion for Summary Judgment, filed January 30, 2013 (Dkt. No. 49). The Court having fully considered the same finds that the motion should be **DENIED** for the reasons set forth below.

I. **BACKGROUND**

Plaintiff Christian Cutler ("Cutler") was employed by Stephen F. Austin State University ("SFA") and became Director of Art Galleries in 2007. Defendant Dr. Baker Pattillo ("Pattillo") has been at all relevant times the President of SFA. Defendant Dr. Richard "Ric" Berry ("Berry") became SFA Provost, or academic vice-president, in 2007. Defendant Dr. Addison C. "Buddy" Himes ("Himes") became SFA Dean of Fine Arts shortly after Cutler began as Director of Art Galleries. Finally, Dr. Scott Robinson ("Robinson") became the Director of the School of Art and Cutler's direct supervisor in August of 2008. Cutler filed suit pursuant to 42 U.S.C. § 1983, alleging that these Defendants, in their official and individual capacities, violated his First

Amendment rights when SFA terminated his employment based on allegations related to his conduct with U.S. Representative Louie Gohmert and his staff.

According to Cutler, a member of Rep. Gohmert's staff invited him in 2010 to "jury" a high school art contest in Tyler, Texas. Defendants contend that the staff member contacted Cutler to express Rep. Gohmert's interest in hosting the contest at SFA. Whatever the offer, Cutler later rejected it, telling Rep. Gohmert's office that he believed the Congressman to be a "sensationalist" and "fear monger." In response to this rejection, Rep. Gohmert sent a letter to Cutler, with a copy to Pattillo, indicating (among other things) that because of Cutler's actions SFA had lost an opportunity to host an important art contest. It is undisputed that: (a) Robinson telephoned Cutler on September 20, 2010, to discuss the incident between Cutler and Rep. Gohmert; (b) that Berry met with Himes and Robinson on September 21, 2010, to discuss the same; (c) that Cutler sent an email on September 22, 2010, to Pattillo, Himes, and Robinson to explain the incident with Rep. Gohmert's office; (d) that Cutler met with Himes on September 23, 2010, and then with Berry the same day; and (e) on September 27, 2010, Himes gave Cutler a letter of termination from Berry.

By the instant motion, Defendants request the Court to enter summary judgment that Cutler does not have a valid section 1983 claim against any defendant. Alternatively, Defendants request the Court to enter summary judgment that Defendants are entitled to qualified immunity.

## II.  LEGAL STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering motions for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255; *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Where a government official pleads qualified immunity in good faith, the burden on summary judgment shifts to the plaintiff, who "bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the [official's] conduct." *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). In order to meet such burden, the plaintiff must show that "the [official's] actions were objectively unreasonable, in light of clearly-established law at the time, and in light of the information the [official] possessed." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 321 (5th Cir. 2000). "Qualified immunity thus protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the plaintiff." *Id.* (internal quotations and citation omitted).

### III.   ANALYSIS

Defendants first argue that Robinson and Himes are not "final decision-makers" within the purview of section 1983. Defendants further argue that Cutler fails to prove every element of

his First Amendment retaliation claim. Finally, Defendants argue that they are entitled to qualified immunity. The Court addresses each in turn.

### a. Whether Robinson and Himes are Final-Decision Makers

To pursue a claim under section 1983, Cutler "must 'establish that [each] defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'" *Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012). Defendants argue that Robinson and Himes "'cannot be liable independently if they did not make the final decision' to terminate Cutler" and that "Cutler has no competent evidence that either Himes or Robinson 'possessed leverage, or exerted influence' over Berry or Pattillo." (*See* Dkt. No. 49 at 13-14 (*quoting Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001); *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009)).) Beyond these conclusory allegations, Defendants provide no argument or supporting analysis. In response, Cutler contends that both Robinson and Himes were at a meeting where Robinson reported his findings concerning the incident with Rep. Gohmert's office and both Robinson and Himes alleged a series of interpersonal problems with Cutler that Berry claimed to rely on in terminating Cutler. Cutler further argues that both Pattillo and Berry have testified that they relied heavily on both Himes' and Robinson's opinions, advice and investigation in deciding to terminate Cutler.

The Court having considered the briefing and evidence finds that there is a genuine issue of material fact as to whether Defendants Robinson and Himes exerted influence over Berry and Pattillo. Accordingly, Defendants' contention that Robinson and Himes are not final-decision makers and therefore entitled to summary judgment in their favor should be **DENIED**.

### b. First Amendment Retaliation Claim

The First Amendment "protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). To establish a First Amendment retaliation claim based on such speech, a plaintiff must demonstrate that: (1) he suffered an adverse employment action; (2) he spoke as a citizen, and not as a public employee, on a matter of public concern; (3) his interest in the speech outweighed the employer's interest in promoting efficiency; and (4) the speech precipitated the adverse employment action. *See, e.g.*, *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007).

Defendants argue that Cutler's remarks are not protected because he was speaking in his capacity as SFA's Director of Galleries. Defendants do not contest that Cutler suffered an adverse employment action. (Dkt. No. 49 at 14.) Further, while Defendants argue that Cutler has not provided indirect evidence of a causal connection between Cutler's protected speech and the retaliatory conduct, Defendants twice expressly stated that they do not contest whether Cutler's protected speech was a substantial or motivating factor behind their actions. (Dkt. No. 49 at 14; Dkt. No. 52 at 1.) Accordingly, the only issue before the Court is whether Cutler spoke as a citizen on a matter of public concern or as an official pursuant to his duties.

If Cutler spoke pursuant to his official duties, then he was not speaking as a citizen for First Amendment purposes and his communications were not insulated from employer discipline. *Garcetti*, 547 U.S. at 421; *see also Elizondo v. Parks*, 431 F. Appx. 299, 303 (5th Cir. 2011). Defendants contend that, in considering whether Cutler spoke pursuant to his official duties, the Court "must look to the facts as the defendant reasonably found them to be rather than the facts as they actually were." *See Johnson v. La.*, 369 F.3d 826, 831-32 (5th Cir. 2004) (explaining the

holding of *Waters v. Churchill*, 511 U.S. 661, 679-81 (1994), that where the content of an employee's speech is disputed, the court must look to the facts as the defendant reasonably found them to be). Defendants agree that there is a fact issue as to the context of the speech at issue (Dkt. No. 52 at 5), but argue that when they decided to discharge Cutler, they had reasonably found that Cutler interacted with Rep. Gohmert's office in his capacity as SFA Director of Galleries. Cutler argues that Defendants did not make such a finding and, if they did, the finding was not reasonable because Defendants did not reasonably investigate the issue.

While Defendants offer evidence that they heard and considered Cutler's explanation given to them on September 20 and September 23, as well as Rep. Gohmert's letter and other evidence supplementing the same, Cutler presents sufficient evidence to create a genuine fact issue as to whether Defendants reasonably made a finding that Cutler interacted with Rep. Gohmert's office in his official capacity. Specifically, Cutler presents evidence that Defendants ignored Cutler's efforts to explain the incident and instead focused on SFA's relationship with Rep. Gohmert. (*See, e.g.*, Dkt. No. 51, Ex. 10 at 2 (Berry had directed Himes to fire Cutler on September 22, before Cutler had a chance to speak with Berry), 4 (Himes did not think whether Rep. Gohmert asked Cutler to jury a contest or asked SFA to host the contest was an issue), 5 (Himes "could see where [Cutler] would feel that [he was being railroaded]); Ex. 11 at 53 (Himes testified that "[n]ormally when something like this would take place, there would be some sort of investigation . . . [a]nd there wasn't any investigation [here] per se"); Ex. 12 at 9 (Berry told Cutler that Rep. Gohmert helps SFA get funding and that he would not say things in public about congressmen or state representatives that he would say in private), 11 (Berry told Cutler that the issue was not about Cutler, but about SFA's relationship with Rep. Gohmert).)

6

The law clearly requires the Court, in this context, to draw all reasonable inferences in favor of non-movant Cutler. Having done so, the Court finds that there exists a genuine issue of fact whether Defendants conducted a reasonable investigation and, as a consequence, whether they reasonably found that Cutler was responding to a request from Gohmert's staff in his official capacity as Director of Galleries at SFA. Such factual issue is material to and directly impacts whether Cutler or Defendants reasonably believed that Cutler was responding to a request to jury an art contest as a private citizen or to host the contest at SFA in his official capacity. The Court finds that such disputed material fact issues prevent the Court from granting Defendants' motion for summary judgment on Cutler's section 1983 claim. Accordingly, such motion must be **DENIED**.

    c. **Qualified Immunity**

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (internal citation omitted). Courts have discretion to decide which of the two prongs of qualified immunity to consider first. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). "Even if the government official's conduct violates a clearly established right, the official is entitled to qualified immunity if his conduct was objectively reasonable." *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008).

Defendants argue that Cutler's First Amendment right not to be terminated for his remarks must be "'clearly established' such that 'it would be clear to a reasonable official that his conduct was unlawful *in the situation he confronted*.'" (Dkt. No. 52 (citing *Porter v.*

*Ascension Parish Sch. Bd.*, 393 F.3d 608, 618 (5th Cir. 2004) (emphasis added by Defendants)).) Defendants' emphasis, however, is misplaced. "[T]he question whether there was a clearly-established right does not turn on the existence of a court decision determining that conduct identical to that which is at issue here is unlawful." *Barrow v. Greenville Indep. Sch. Dist.*, 332 F.3d 844, 848 (5th Cir. 2003). Rather, the pertinent inquiry asks "whether the state of the law [in 2010] gave [Defendants] fair warning that [their] alleged treatment of [Cutler] was unconstitutional." *Id.* In 2010, it was clearly established law that taking an adverse-employment action against an employee for political reasons violates the First Amendment. *See, e.g.*, *Correa v. Fischer*, 982 F.2d 931, 933 (5th Cir. 1993). Here, Cutler alleged that Defendants terminated him because of his statements to Rep. Gohmert's office, spoken as a citizen, that Rep. Gohmert is a "sensationalist" and "fear monger." (*See generally* Dkt. No. 6.) Defendants do not dispute, on summary judgment, whether Cutler's interest in speech outweighed SFA's interest in promoting efficiency. Accordingly, the Court finds that Cutler has alleged a violation of a clearly established constitutional right.

The Court further finds that there are genuine issues of material fact in dispute as to whether Defendants' conduct was objectively reasonable. First, "an official's conduct is ordinarily not objectively reasonable if it violates a clearly established right, because 'a reasonably competent public official should know the law governing his conduct.'" *Guillory v. Thomas*, 355 Fed. Appx. 837, 841 (5th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Terminating Cutler for expressing his political views, when speaking as a citizen, clearly violates the First Amendment. Defendants knew or should have known that public employees do not forfeit their right of free expression as a condition of their employment. The First Amendment is not limited to employees within the

private sector only. While Defendants argue that they were objectively reasonable in finding that Cutler spoke as an official of SFA, the Court finds that there is a reasonable inference that Defendants conduct was nevertheless objectively unreasonable. *See* Section III(b) *supra*. Accordingly, the Court finds that Defendants are not entitled to qualified immunity as a matter of law and that Defendants motion for summary judgment in that regard should be **DENIED**.

## IV. CONCLUSION

To grant summary judgment in light of the legitimate factual disputes identified above would not only be contrary to the binding authorities within this Circuit but would effectively deny Cutler his opportunity to confront these Defendants in open court. Such a right should not be taken away unless there is no material factual dispute to be determined. Such is not the case here.

For the reasons stated herein, the Court finds that Defendants motion for summary judgment should be and is hereby **DENIED** in all respects.

**So ORDERED and SIGNED this 10th day of June, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

9